# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

## PACER Cover Sheet
## for Electronically Filed Documents

Any data shown here are current as of 06/10/06    . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:** Joe Thomas Turner and Ru Than Turner

**Case Number:** 03-10672

### Document Information

**Description:** Order Granting [567-1] Notice of Conversion by First Savings Bank Granting [566-1] Notice of Uncured Default (Motion to Enforce Stipulation) and To Convert Case From Chapter 11 to Chapter 7. Philip Montoya Appointed Trustee

**Received on:** 2005-01-10 09:44:14.000

**Date Filed:** 2005-01-10 00:00:00.000

**Date Entered On Docket:** 2005-01-10 00:00:00.000

### Filer Information

**Submitted By:** Patti Hennessy

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re: JOE THOMAS TURNER and
RU THAN TURNER,

No. 11-03-10672 ML

Debtors.

## ORDER GRANTING MOTION TO ENFORCE STIPULATION AND CONVERTING CASE TO CHAPTER 7

THIS MATTER is before the Court on the Notice of Uncured Default and Conversion to Chapter 7 Pursuant to Stipulation Filed March 17, 2004 and Order Approving Same ("Motion to Enforce Stipulation"), filed by creditor First Savings Bank, by and through its attorneys of record, Martin, Lutz, Roggow, Hosford & Eubanks, P.C. (James A. Roggow). The Court held a final hearing on the Motion to Enforce Stipulation on December 10, 2004. The Motion to Enforce Stipulation asserts that Debtors have defaulted under the terms of the Stipulation Dismissing UCC's Alternative Motion to Dismiss or Convert Case to Chapter 7, First Savings Bank's Motion for Appointment of Trustee or Examiner and Withdrawal of Objections to Debtors First Amended Disclosure Statement ("Stipulation"), entered March 18, 2004, and approved May 6, 2004,[1] and requests the Court to convert this proceeding to Chapter 7 as required by the Stipulation. The Unsecured Creditors' Committee ("UCC"), represented by the Behles Law Firm, P.C. (Jennie Deden Behles), and the Debtors, represented by Lamb, Metzgar, Lines & Dahl, P.A. (Steven Tal Young), oppose the Motion to Enforce Stipulation.

---

[1] *See* Order Approving Stipulation Dismissing UCC's Alternative Motion to Dismiss or Convert Case to Chapter 7, First Savings Bank's Motion for Appointment of Trustee or Examiner, and Withdrawal of Objections to Debtors' First Amended Disclosure Statement with Certain Clarifying Modifications ("Order Approving Stipulation") (Docket # 435).

The Court held a final hearing on the Motion to Enforce Stipulation on December 10, 2004 and heard final arguments on December 15, 2004. The United States Trustee (Ron E. Andazola) appeared at the final hearing and at closing arguments and supports conversion of this case to Chapter 7. AmBank, by and through its attorney, William Perkins, appeared at the final hearing on December 10, 2004 and does not oppose the Motion to Enforce Stipulation. First New Mexico Bank, by and through its attorney, Steven H. Mazer, also appeared at the final hearing on December 10, 2004 in support of the Motion to Enforce Stipulation to the extent dismissal, rather than conversion, is possible. Because the enforcement and penalties provisions of the Stipulation require conversion, rather than dismissal,[2] and there is no pending motion to dismiss now before the Court, dismissal is not an option. After considering all the evidence before the Court, and being otherwise sufficiently informed, the Court finds that all of the Debtors' defaults under the Stipulation, taken as a whole, are sufficient to require conversion of this proceeding to Chapter 7 in accordance with the terms of the Stipulation. Accordingly, the Court enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Debtors filed this voluntary petition under Chapter 11 of the Bankruptcy Code on January 29, 2003.

2. In April 2003, First Savings Bank ("FSB") filed a motion for appointment of trustee or examiner. (Docket # 67). The UCC filed an alternative motion to dismiss or convert case to Chapter 7 (Docket # 224), which FSB joined. (Docket # 252; Creditor First Savings Bank's Joinder in the

---

[2]*See* Stipulation, p. 18, ¶ 17.

2

Unsecured Creditor's Committee's Motion to Dismiss or Convert Case to Chapter 7).

3. These pending motions to dismiss or convert and for appointment of trustee or examiner were resolved by stipulation following a two-day settlement conference before Magistrate Judge Alan C. Torgerson in February 2004. *See* Stipulation (Docket # 374).

4. Pursuant to the Stipulation, the Debtors were required, *inter alia,* to do the following: 1) make complete disclosures of their assets and liabilities (Stipulation ¶ 4); 2) amend their statements and schedules as needed to reconcile them with any additional disclosures (Stipulation ¶ 6); 3) disclose all transactions, sales or trades of assets of the estate in excess of $1,000.00 to creditors in advance of such transactions (Stipulation ¶ 7); 4) provide to the UCC and FSB financial disclosures in the form of bank statements and financial statements along with monthly operating reports by the 20th day of each succeeding month (Stipulation ¶ 8); 5) make monthly payments of $5,000.00 into the Court registry to be used upon Court approval for payment of administrative expenses (Stipulation ¶ 9); 6) disclose all contact with interested purchasers of any of the Debtors' real property within forty-eight hours of contact (Stipulation ¶ 13); 7) obtain an assignment from Jason Turner of his interest in the Moody Ranch Lease within thirty days of the Stipulation (Stipulation ¶ 15); 8) forward all proceeds from the sale of cattle to FSB for escrow by FSB with liens of FSB and Farm Credit attaching to the proceeds (Stipulation ¶ D.x.); and 9) sell all real estate and leasehold interests within one year of the Stipulation (Stipulation ¶ 11).

5. Debtors have not made the monthly deposits of $5,000.00 into the Court's registry in accordance with paragraph 9 of the Stipulation.

6. In February 2003 Gerald Billings loaned the Debtors $50,000.00 ("Billings Loan"). There

was no promissory note to accompany this transaction, and no repayment terms were discussed, though both Mr. Billings and Mr. Turner expected that the loan would be re-paid. Mr. Billings has never made a demand for payment of the Billings Loan.

    7. The Billings Loan was not disclosed.

    8. Approximately sixty-three head of cattle, including some cow-calf pairs valued at between $25,000.00 to $30,000.00 were transferred to Mr. Billings ("Billings Cattle Transaction") in mid-May of 2004. (Testimony of Mr. Billings). Although the Debtor's son, Justin Turner, made the transfer and the Debtor testified that he was not aware at the time that there were any remaining cattle on the Cow Springs property, the cattle were assets of the Debtors' bankruptcy estate.

    9. The Billings Cattle Transaction was not disclosed.

    10. Debtors amended their statements and schedules in April 2004. (*See* Docket # 405).

    11. Debtors have failed to file timely monthly operating reports. The monthly operating report for the period ending August 31, 2004 was not filed until October 26, 2004. (*See* Docket # 576). As of the hearing date no reports had been filed for the months of September or October 2004.

    12. Debtors have incurred post-petition taxes that remain unpaid. (*See* Monthly Operating Report for August 2004 - Docket #576). The Monthly Operating Report for July contains a statement that there are no post-petition payroll taxes or other taxes past due, when, in fact, there were substantial unpaid post-petition taxes owing. (*See* Docket # 512; page MOR-7).

    13. Debtors have failed to timely disclose offers they received to purchase real estate from the bankruptcy estate. A copy of the Contract for Purchase and Sale of real estate signed by Neil and Barbara Teatsorth dated November 10, 2004 was not forwarded to counsel for the UCC and counsel

4

for FSB until November 23, 2004. (*See* FSB Exhibit 8). A copy of the Contract for Purchase and Sale of real estate signed by Howard Simons dated November 24, 2004 was not forwarded to counsel for the UCC and counsel for FSB until December 3, 2004. (*See* FSB Exhibit 10).

14. Debtors have made minimal efforts to obtain an assignment of Jason Turner's interest in the Moody Ranch Lease. Mr. Turner testified that he asked his son for an assignment, but that his son would not agree to assign his interest in the lease nor would Phelps Dodge consent to an assignment. Debtors have taken no further action to force an assignment.

15. Debtors have made minimal efforts to identify assets of their bankruptcy estate. The Monthly Operating Report for August 2004 contains a substantial list of equipment that Debtors report as either "sold by Tracy Turner" or "missing." There is no evidence the Debtors have taken any action to determine where the "missing" equipment is or to recover the proceeds of the sold equipment from their son.

## DISCUSSION

Stipulated orders are akin to settlement agreements among the parties, and as such, are to be interpreted by the Courts as contracts. *See Farmers Nat'l Bank of Osborne v. Mettlen (In re Mettlen),* 174 B.R. 822, 826 n.4 (D. Kan. 1994) ("'[consent orders entered by the court pursuant to stipulation by the parties have a dual nature as both judicial decrees and contractual obligations [Citation omitted]. The contractual nature of such agreements predominates in their enforcement. [Citation omitted].'") (quoting *In re Check Reporting Services, Inc.,* 137 B.R. 653, 657 (Bankr. W.D.Mich. 1992)). *See also, In re Arrington,* 293 B.R. 76, 79 (Bankr.M.D.Ga. 2003) ("'An agreement to settle a legal dispute is a contract . . . .'") (quoting *Village of Kaktovik v. Watt,* 698

5

F.2d 222, 230 (D.C.Cir. 1982)). Contract interpretation is governed by state law principles. *See Arrington,* 293 B.R. at 79 (referencing case decided by the Eleventh Circuit interpreting a settlement agreement as a contract using Florida general contract law); *Mettlen*, 174 B.R. at 824 (applying Kansas law to determine whether compromise and settlement could be rescinded).

New Mexico case law comports with the general public policy that settlements should be encouraged. *See Envtl. Control, Inc. v. City of Santa Fe,* 131 N.M. 450, 456, 38 P.3d 891, 897 (Ct.App. 2002) ("Public policy encourages settlement agreements, and the courts have a duty to enforce them.") (citing *Bd. of Educ. v. Dep't of Public Educ.,* 128 N.M. 398, 401, 993 P.2d 112, 115 (Ct.App. 1999)). As in contract disputes, the unambiguous language of a settlement agreement defines the rights and obligations of the parties to the agreement. *See Burden v. Colonial Homes, Inc.,* 79 N.M. 170, 173, 441 P.2d 210, 213 (1968) ("We are bound by the unambiguous language of the settlement agreement[ ].") (citation omitted).

"Every breach of contract gives the injured party a right to damages" unless "[t]he parties ... by agreement vary the rules" and provide in the agreement for a remedy in substitution of damages. Restatement (Second) of Contracts § 346, comment *a* (1981). Here, the remedy is contained within the Stipulation, which provides that if the Debtors fail to meet the requirements contained in the Stipulation, the case will be converted to Chapter 7. *See* Stipulation, ¶ 17 ("If Debtors fail to meet any of the above requirements, Debtors consent to a conversion to Chapter 7.").

Debtors contend that they have made every effort to comply with the terms of the Stipulation, and that the defaults alleged by FSB are merely technical defaults, some of which were caused by

6

outside factors.[3] Similarly, the UCC argues that the Debtors' defaults do not constitute material breaches of the Stipulation which would entitle FSB to enforce the Stipulation and convert the Debtors' bankruptcy proceeding to Chapter 7. Materiality is relevant to claims for breach of contract when the claimant seeks substantial damages or recision of the contract; failure to perform any term of a contract nevertheless constitutes a breach of contract. *See* 17A Am.Jur.2d Contracts § 706 (2004) ("While the failure to perform any term of a contract is a breach, a party who does not perform is liable for substantial damages resulting only from a material breach."); Williston on Contracts § 63:3 ("[A] nonperforming party is liable for any breach of contract, but the other party is discharged from further performance, and is entitled to substantial damages only when there is a material breach.")

FSB has identified several defaults by the Debtors under the Stipulation. The question for the Court is whether the defaults entitle FSB to enforce the Stipulation and convert of this proceeding to Chapter 7. Debtors admit that they has not made the $5,000.00 monthly payments into the Court's registry as required by the Stipulation, and that the Monthly Operating Reports have not been timely filed. In their defense, Debtors assert that because all administrative fees are current, or near current, that the failure to make the payments called for under the Stipulation is not material. Mr. Turner also testified that he thought the $50,000.00 he received from Mr. Billings was disclosed on one of the Debtors' monthly operating reports, but when he reviewed the reports, he could not specifically identify where it was disclosed. None of the monthly operating reports contain a specific reference to money

---

[3]For example, Debtors cite their accountant's refusal to prepare operating reports until she is compensated a reason for their untimely filing of monthly operating reports. Debtors also point out that FSB objected to the accountant's application for compensation. (*See* Docket # 474).

7

having been received from Gerald Billings. Similarly, the transfer of cattle to Mr. Billings in mid-May 2004 was not disclosed . Mr. Turner testified that he was not aware of the transaction when it occurred because his son had approached Mr. Billings directly, and that he believed all cattle had previously been sold.

Cumulatively, these defaults and the defaults described in the Court's findings of fact are sufficient cause for enforcement of the remedy contained in the Stipulation. In considering materiality of a breach of contract within the context of recision, the New Mexico Court of Appeals acknowledged that "[s]ome courts have described a material breach as the 'failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract.'" *Famiglietta v. Ivie-Miller Enterprises,* 126 N.M. 69, 74, 966 P.2d 777, 782 (Ct.App. 1998) (quoting *Horton v. Horton,* 487 S.E.2d 200, 204 (Va. 1997)). It is apparent that the purpose of the Stipulation was to move the Debtors toward confirmation of a plan of reorganization. Although the Debtors recently filed a second amended plan of reorganization, the Debtors' multiple defaults under the Stipulation indicate that the Debtors continue to struggle to properly account for estate assets, thus defeating the Stipulation's essential purpose. Conversion, as called for in the Stipulation, is therefore proper.

At closing argument the UCC raised an issue concerning the disclosure requirements under Rule 2019, Fed.R.Bankr.P., and the multiple representation of creditors FSB, Western Bank Lordsburg, and Farm Credit of New Mexico and its related entities by the same law firm, Martin, Lutz, Roggow, Hosford & Eubanks, P.C. Martin, Lutz, Roggow, Hosford & Eubanks, P.C. filed a verified statement in accordance with Rule 2019, Fed.R.Bankr.P. on March 5, 2003. (Docket #25). The

8

disclosure statement states that all three creditors have secured claims and that all three creditors have consented to the multiple representation by Martin, Lutz, Roggow, Hosford & Eubanks.  No amended Rule 2019 statement has been filed.

      The UCC contends that FSB has failed to comply with the requirements of Rule 2019, Fed.R.Bankr.P., because FSB has not filed an amended statement that its claim is now unsecured. Rule 2019 requires "every entity . . . representing more than one creditor . . . [to] file a verified statement setting forth . . . the nature and amount of the claim or interest . . ."  Rule 2019, Fed.R.Bank.P.   The rule provides further that

> A supplemental statement shall be filed promptly, setting forth any material changes in the facts contained in the statement filed pursuant to this subdivision.  *Id.*

Upon motion by any interested party, or upon the Court's own initiative, the Court may determine whether there has been a failure to comply with the requirements of rule 2019, and, if so, "may refuse to permit that entity . . . to be heard further . . . ."  Rule 2019(b), Fed.R.Bankr.P.  Sanctions for failing to comply with the disclosure requirements of Rule 2019(a) are within the discretion of the bankruptcy court. Rule 2019(b), Fed.R.Bankr.P. ("the court *may . . .*") (emphasis added).  *See also*, *In re Oklahoma P.A.C. First Ltd. P'ship,* 122 B.R. 387, 391 (Bankr.D.Ariz. 1990) (noting "that a failure to comply with Bankruptcy Rule 2019(a) may result in the imposition of no sanctions or remedies under Bankruptcy Rule 2019(b).")   If FSB's status as a secured creditor as reported in the initial Rule 2019 statement has changed to unsecured, that change should be disclosed in a supplemental statement filed with the Court in accordance with Rule 2019(a), Fed.R.Bankr.P.   But given that the UCC has not filed a motion against counsel for FSB pursuant to Rule 2019(b), Fed.R.Bankr.P., and counsel for FSB

9

has been representing Western Bank and Farm Credit throughout this bankruptcy proceeding as disclosed in its initial Rule 2019 statement, the Court declines to disqualify FSB from pursuing its Motion to Enforce Stipulation based on a failure to file a supplemental disclosure statement reflecting any change in FSB's status as a secured creditor.[4]

WHEREFORE, IT IS HEREBY ORDERED that the Motion to Enforce Stipulation is GRANTED.

ORDERED FURTHER, that this bankruptcy proceeding is converted to Chapter 7.

ORDERED FINALLY, that the United States Trustee appoint a trustee in this case.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

I certify that on the date shown on the attached document verification, a true and correct copy of the foregoing was either electronically transmitted, faxed, delivered or mailed to the listed counsel and/or parties.

Steven Tal Young
Attorney for Debtors
PO Box 987
Albuquerque, NM 87103

---

[4] *Cf. In re MJ Metal Products, Inc.,* 292 B.R. 702, 704 (Bankr.D.Wyo. 2003) (rejecting debtor's "opportunistic" argument that a creditor's vote rejecting confirmation should be invalidated for failure to comply with Rule 2019(a) where, among other things, debtor did not file a motion under Rule 2019(b)).

10

James Roggow
Attorney for FSB
PO Drawer 1837
Las Cruces, NM 88004

Jennie Deden Behles
Attorney for Unsecured Creditors Committee
PO Box 7070
Albuquerque, NM 87194

Steven H. Mazer
Attorney for First New Mexico Bank
122 10th Street NW
Albuquerque, NM 87102

Elizabeth Dranttel
Attorney for Citicapital
3803 Atrisco Blvd. NW, Suite A
Albuquerque, NM 87120

J.C. Robinson
Attorney for AmBank
PO Box 1219
Silver City, NM 88062

Ron Andazola
Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103

_____
Patti G. Hennessy
Law Clerk
(505) 348-2545

11